**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RAI CARE CENTERS OF MARYLAND I,
LLC
920 Winter Street
Waltham, MA 02451,

        Plaintiff,

v.

UNITED STATES OFFICE OF PERSONNEL
MANAGEMENT
1900 E Street, N.W.
Washington, D.C. 20415-3610,

        Defendant.

Civil Action No. _____

## **COMPLAINT**

Plaintiff owns and operates outpatient dialysis facilities that provided regular, life-sustaining treatment to individuals covered by a health plan for federal employees run by CareFirst BlueCross BlueShield.  From 2012 forward, Plaintiff treated patients covered by the health plan, and was routinely told by plan representatives that payment would be at 65% of Plaintiff's billed charges, consistent with the text of the governing plan document.  Plaintiff received payment at that rate for many patients until early 2015, when payment rates suddenly dropped to levels far below those required.

Plaintiff seeks relief from the Office of Personnel Management—the employer entity who set up the health plan.  Plaintiff seeks benefits due under the health plan document for services that Plaintiff, as an assignee of its patients, provided in 2015.  Defendant failed to carry out its responsibilities under the plan document, and Plaintiff brings this action to recover the more than $2 million it is owed.

## THE PARTIES

1. Plaintiff RAI Care Centers of Maryland I, LLC ("**RAI**") is a domestic limited liability company, organized under the laws of the state of Delaware, with its principal place of business at 920 Winter Street, Waltham, Massachusetts 02451. Plaintiff RAI owns outpatient renal dialysis facilities located in Washington, D.C. and Maryland—RAI Care Centers of Maryland, LLC d/b/a RAI Chillum-Washington, RAI Care Centers of Maryland, LLC d/b/a RAI Chillum-Hyattsville, and RAI Care Centers of Maryland, LLC d/b/a RAI Baltimore-Beltsville— that provided dialysis treatments to the nine patients (the "**Patients**")[1] whose claims are at issue in this action.

2. Defendant United States Office of Personnel Management ("**OPM**") is an independent federal government agency headquartered at 1900 E Street, N.W., Washington, D.C. 20415-3610. OPM sponsors and/or contracts for provision of the Blue Cross and Blue Shield Service Benefit Plan (the "**Plan**"), which exists to provide healthcare and medical benefits to eligible federal employees and their dependents. At all times material to this action, CareFirst of Maryland, Inc. d/b/a CareFirst BlueCross BlueShield ("**CareFirst**") operated as the administrator and/or insurer of the Plan in the geographic areas relevant to this matter. Each of the Patients, or a spouse or other family member of each of the Patients, is or was a federal employee employed by or through OPM, and each Patient was enrolled in the Plan during the relevant period for his or her medical claims at issue in this action. Under 5 C.F.R. § 890.107(c), OPM is the proper party Defendant in this action.

---

[1] For purposes of patient confidentiality, Plaintiff will not refer to the Patients by name in this Complaint. The Patients' identities are known by all parties, and Plaintiff can, as appropriate and upon request, submit identifying details under seal.

## JURISDICTION AND VENUE

3.      This action arises under the Federal Employees Health Benefits Act ("**FEHBA**"),

5 U.S.C. §§ 8901–14 (2012).  This Court has subject matter jurisdiction pursuant to 5 U.S.C.

§ 8912 and 28 U.S.C. § 1331.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) because

Defendant resides in this judicial district, the Plan is administered in this district, a substantial

portion of the events or omissions giving rise to the claims occurred here, and Defendant is

subject to the Court's personal jurisdiction.

## NATURE OF THE CASE

5.      At all times relevant to this dispute, Plaintiff provided regular, life-sustaining

dialysis treatment to nine Patients covered by the Plan.  When each Patient began receiving

treatment at a Plaintiff facility, Plaintiff verified with CareFirst that the Plan would pay for

dialysis treatments at 65% of billed charges.  For many Patients, the Plan paid appropriately for

weeks, months, or years, routinely paying 65% of billed charges.  However, beginning in early

2015, CareFirst/the Plan abruptly reduced the amounts paid—for the same Patients, under the

same Plan, for the same treatments, at the same facilities—to much less than the expected

amount.

6.      During the relevant time period, each of the Plaintiff dialysis facilities was

considered a "non-member" or "out-of-network" provider under the Plan—*i.e.*, there was no

written agreement in place between Plaintiff and the Plan dictating particular payment rates for

services provided by Plaintiff facilities.  The Plan document effective in calendar year 2015

stated that the Plan was required to pay for treatment at non-member dialysis treatment facilities,

like the Plaintiff facilities, at a rate of 65% of billed charges.  The Plan document was not

amended to provide for different payment amounts until January 1, 2016.

7.      Plaintiff pursues one cause of action through this Complaint.  For treatment provided in 2015, the amounts paid were dramatically lower than the amounts required under the governing Plan document.  Accordingly, under the FEHBA and standing in the shoes of the Patients, Plaintiff seeks a court order directing OPM to require CareFirst/the Plan to pay the benefits due under the Plan for treatment provided in 2015.

8.      In total, Plaintiff seeks to recover underpayments in excess of $2.2 million from the Plan.

## FACTUAL ALLEGATIONS

**The Plan and Relevant Terms**

9.      On information and belief, OPM and CareFirst, or its affiliate on behalf of CareFirst, entered into a contractual relationship by which CareFirst agreed to administer and insure a health benefit plan—the Plan—for OPM's employees and their eligible dependents.

10.     Claim, appeal, and dispute resolution procedures for medical claims for benefits under the Plan are subject to the FEHBA and federal regulations.

11.     The Plan document, attached here as Exhibit A, governed benefits due under the terms of the Plan during the relevant period.

12.     The Plan document states that if an individual is enrolled in the Plan, he/she is entitled to the benefits described in the Plan document.

13.     Outpatient renal dialysis is, and has been during the entire relevant period, a covered benefit under the Plan.

14.     The Plan document effective in 2015 states that for non-member facilities (like the Plaintiff facilities), the Plan pays benefits at 65% of the "Plan allowance."  The Plan

allowance applicable to outpatient services is defined as "the billed amount."

15.     Under the 2015 Plan document, outpatient dialysis services at non-member facilities must be paid at 65% of billed charges.

16.     Effective January 1, 2016, CareFirst amended the Plan document.  The amended Plan document states that the Plan will pay for renal dialysis at non-member facilities at 65% of the "Local Plan allowance in the geographic area in which the care was performed or obtained," and it no longer references "the billed amount" for outpatient services.

**The Patients' Assignment of Rights and Benefits Under the Plan**

17.     As further described below, at all times relevant to this dispute, Plaintiff facilities provided treatment to the Patients, each of whom was at relevant times covered by the Plan.

18.     At the outset of each Patient's treatment at a Plaintiff facility, each Patient signed an agreement assigning his/her rights and benefits under the Plan to Plaintiff (the "**Assignments**").

19.     Through these Assignments, each Patient provided written consent for Plaintiff to pursue and receive benefits due under the Plan for dialysis treatments provided by Plaintiff.

20.     The Patients further authorized Plaintiff to act as their personal representative to appeal payment disputes and pursue legal remedies afforded to them.

21.     Plaintiff brings a claim under the FEHBA in its capacity as the Patients' assignee, seeking benefits under the Plan to which the Patients are entitled for dialysis treatments received in calendar year 2015.

**The Patients Begin Treatment at Plaintiff's Facilities**

22.     Plaintiff provides dialysis treatments to patients who suffer from End Stage Renal Disease ("**ESRD**") and other chronic kidney issues.  These patients receive regular and ongoing

treatments—typically either three to four times per week in a Plaintiff outpatient facility or every day at home, with Plaintiff facility involvement and supervision.

23.     At all times relevant to this dispute, Plaintiff provided regular, life-sustaining dialysis treatment to the Patients who are or were covered by the Plan.

24.     When the Patients began receiving treatment at Plaintiff facilities and thereafter, Plaintiff verified the Patients' benefits with CareFirst/the Plan.  In these verifications, CareFirst/the Plan repeatedly represented to Plaintiff that CareFirst/the Plan would pay for dialysis treatments provided by Plaintiff at 65% of billed charges.

25.     For all Patients who received treatments with Plaintiff prior to early 2015 (six of the nine), the Plan did in fact routinely pay for dialysis treatments provided by Plaintiff at approximately 65% of billed charges.

26.     This was the case for months or even years for some Patients.

**Plaintiff's Treatment of the Patients and CareFirst/the Plan's  Failure to Pay Consistent With Plan Terms**

27.     **Patient A** received necessary, periodic dialysis treatments at RAI's Chillum-Washington outpatient dialysis facility, usually on a regular schedule of approximately three to four treatments each week, beginning approximately in September 2012 and at all times relevant to this dispute.

28.     On information and belief, the Plan covered Patient A and was the primary payer for Patient A's dialysis treatments beginning approximately in September 2012 and at all times relevant to this dispute.

29.     In at least February 2014, Patient A assigned her rights and benefits under the Plan to Plaintiff and consented to Plaintiff's pursuit and receipt of benefits owed to Patient A.

30.     When Patient A began treatment with Plaintiff, she submitted her insurance card,

which contained a BlueCross BlueShield logo and indicated that Patient A was a beneficiary of the "Federal Employee Program."

31.     At or around the time Patient A started treatment, Plaintiff personnel contacted a representative from CareFirst/the Plan to verify Patient A's health coverage and benefits for dialysis treatment.  A CareFirst/Plan representative confirmed that Patient A was a covered beneficiary of the Plan, and that CareFirst/the Plan would pay Plaintiff for out-of-network dialysis treatment at 65% of billed charges.

32.     On information and belief, for dates of service approximately from September 2012 until January 2015, CareFirst/the Plan paid Plaintiff for Patient A's treatment at approximately 65% of billed charges, substantially in accordance with the Plan terms.

33.     Beginning with treatment provided in January 2015 to Patient A, and continuing through December 2015, however, CareFirst/the Plan paid Plaintiff drastically lower amounts— between approximately 7 and 8% of billed charges.

34.     Despite multiple appeals, demand letters, and calls to CareFirst/the Plan and OPM, seeking additional benefits under the Plan for treatment provided to Patient A in 2015, CareFirst/the Plan and OPM have not remedied the underpayments to Plaintiff.

35.     Plaintiff has suffered damages as a result of CareFirst/the Plan's insufficient payments for treatment provided to Patient A from January 2015 through December 2015, in an amount estimated to be at least $332,000.

36.     **Patient B** received necessary, periodic dialysis treatments at RAI's Chillum-Washington outpatient dialysis facility, on a regular schedule of approximately three to four treatments each week, beginning approximately in September 2013 and at all times relevant to this dispute.

37.     The Plan covered Patient B and was the primary payer for Patient B's dialysis treatments beginning approximately in September 2013 and at all times relevant to this dispute.

38.     In September 2013, Patient B assigned his rights and benefits under the Plan to Plaintiff and consented to Plaintiff's pursuit and receipt of benefits owed to Patient B.

39.     When Patient B began treatment with Plaintiff, he submitted his insurance card, which contained a BlueCross BlueShield logo and indicated that Patient B was a beneficiary of the "Federal Employee Program."

40.     At the time Patient B started treatment, Plaintiff personnel contacted a representative from CareFirst/the Plan to verify Patient B's health coverage and benefits for dialysis treatment.  A CareFirst/Plan representative confirmed that Patient B was a covered beneficiary of the Plan, and that CareFirst/the Plan would pay Plaintiff for out-of-network dialysis treatment at 65% of billed charges.

41.     For dates of service approximately from September 2013 through March 2015, CareFirst/the Plan paid Plaintiff for Patient B's treatment at approximately 65% of billed charges, substantially in accordance with the Plan terms.

42.     Beginning with treatment provided in March 2015 to Patient B, and continuing through December 2015, however, CareFirst/the Plan paid Plaintiff drastically lower amounts— between approximately 7 and 8% of billed charges.

43.     Despite multiple appeals, demand letters, and calls to CareFirst/the Plan and OPM, seeking additional benefits under the Plan for treatment provided to Patient B in 2015, CareFirst/the Plan and OPM have not remedied the underpayments to Plaintiff.

44.     Plaintiff has suffered damages as a result of CareFirst/the Plan's insufficient payments for treatment provided to Patient B from March 2015 through December 2015, in an

amount estimated to be at least $445,000.

45.     **Patient C** received necessary, periodic dialysis treatments at RAI's Chillum-Washington outpatient dialysis facility, on a regular schedule of approximately three to four treatments each week, beginning approximately in August 2012 and at all times relevant to this dispute.

46.     On information and belief, the Plan covered Patient C and was the primary payer for Patient C's dialysis treatments beginning approximately in August 2012 and at all times relevant to this dispute.

47.     In August 2012, Patient C assigned her rights and benefits under the Plan to Plaintiff and consented to Plaintiff's pursuit and receipt of benefits owed to Patient C.

48.     When Patient C began treatment with Plaintiff, she submitted her insurance card, which contained a BlueCross BlueShield logo and indicated that Patient C was a participant in the "Federal Employee Program."

49.     At the time Patient C started treatment, Plaintiff personnel contacted a representative from CareFirst/the Plan to verify Patient C's health coverage and benefits for dialysis treatment.  A CareFirst/Plan representative confirmed that Patient C was a covered participant in the Plan, and that CareFirst/the Plan would pay Plaintiff for out-of-network dialysis treatment at 65% of billed charges.

50.     On information and belief, for dates of service approximately from August 2012 through early February 2015, CareFirst/the Plan paid Plaintiff for Patient C's treatment at approximately 65% of billed charges, substantially in accordance with the Plan terms.

51.     Beginning with treatment provided in February 2015 to Patient C, and continuing through August 2015, however, CareFirst/the Plan paid Plaintiff drastically lower amounts—

between approximately 0 and 8% of billed charges.

52.     Despite multiple appeals, demand letters, and calls to CareFirst/the Plan and OPM, seeking additional benefits under the Plan for treatment provided to Patient C in 2015, CareFirst/the Plan and OPM have not remedied the underpayments to Plaintiff.

53.     Plaintiff has suffered damages as a result of CareFirst/the Plan's insufficient payments for treatment provided to Patient C from February 2015 through August 2015, in an amount estimated to be at least $300,000.

54.     **Patient D** received necessary, periodic home dialysis treatments through RAI's Chillum-Hyattsville outpatient dialysis facility, typically on a regular daily schedule, beginning approximately in October 2015 and at all times relevant to this dispute.

55.     The Plan covered Patient D and was the primary payer for Patient D's dialysis treatments beginning approximately in October 2015 and at all times relevant to this dispute.

56.     In October 2015, Patient D assigned his rights and benefits under the Plan to Plaintiff and consented to Plaintiff's pursuit and receipt of benefits owed to Patient D.

57.     When Patient D began treatment with Plaintiff, he submitted his insurance card, which contained a BlueCross BlueShield logo and indicated that Patient D was a beneficiary of the "Federal Employee Program."

58.     At the time Patient D started treatment, Plaintiff personnel contacted a representative from CareFirst/the Plan to verify Patient D's health coverage and benefits for dialysis treatment.  A CareFirst/Plan representative confirmed that Patient D was a covered beneficiary of the Plan.

59.     For dates of service approximately from October 2015 through December 2015, CareFirst/the Plan failed to pay Plaintiff for Patient D's treatment at 65% of billed charges, as

dictated by the Plan terms.

60.     Instead, CareFirst/the Plan paid Plaintiff drastically lower amounts—between approximately 3 and 8% of billed charges.

61.     Despite multiple appeals, demand letters, and calls to CareFirst/the Plan and OPM, seeking additional benefits under the Plan for treatment provided to Patient D in 2015, CareFirst/the Plan and OPM have not remedied the underpayments to Plaintiff.

62.     Plaintiff has suffered damages as a result of CareFirst/the Plan's insufficient payments for treatment provided to Patient D from October 2015 through December 2015, in an amount estimated to be at least $194,000.

63.     **Patient E** received necessary, periodic dialysis treatments at RAI's Chillum-Washington outpatient dialysis facility, on a regular schedule of approximately three to four treatments each week, beginning approximately in February 2013 and at all times relevant to this dispute.

64.     The Plan covered Patient E and was the primary payer for Patient E's dialysis treatments beginning approximately in February 2013 and at all times relevant to this dispute.

65.     In February 2013, Patient E assigned her rights and benefits under the Plan to Plaintiff and consented to Plaintiff's pursuit and receipt of benefits owed to Patient E.

66.     When Patient E began treatment with Plaintiff, she submitted her insurance card, which contained a BlueCross BlueShield logo and indicated that Patient E was a beneficiary of the "Federal Employee Program."

67.     At the time Patient E started treatment, Plaintiff personnel contacted a representative from CareFirst/the Plan to verify Patient E's health coverage and benefits for dialysis treatment.  A CareFirst/Plan representative confirmed that Patient E was a covered

beneficiary of the Plan, and that CareFirst/the Plan would pay Plaintiff for out-of-network dialysis treatment at 65% of billed charges.

68.     For dates of service approximately from February 2013 until January 2015, CareFirst/the Plan paid Plaintiff for Patient E's treatment at approximately 65% of billed charges, substantially in accordance with the Plan terms.

69.     Beginning with treatment provided in January 2015 to Patient E, and continuing through August 2015, however, CareFirst/the Plan paid Plaintiff drastically lower amounts— between approximately 7 and 8% of billed charges.

70.     Despite multiple appeals, demand letters, and calls to CareFirst/the Plan and OPM, seeking additional benefits under the Plan for treatment provided to Patient E in 2015, CareFirst/the Plan and OPM have not remedied the underpayments to Plaintiff.

71.     Plaintiff has suffered damages as a result of CareFirst/the Plan's insufficient payments for treatment provided to Patient E from January 2015 through August 2015, in an amount estimated to be at least $290,000.

72.     **Patient F** received necessary, periodic dialysis treatments at RAI's Chillum-Washington outpatient dialysis facility, on a regular schedule of approximately three to four treatments each week, beginning approximately in March 2014 and at all times relevant to this dispute.

73.     The Plan covered Patient F and was the primary payer for Patient F's dialysis treatments beginning approximately in March 2014 and at all times relevant to this dispute.

74.     In March 2014, Patient F assigned her rights and benefits under the Plan to Plaintiff and consented to Plaintiff's pursuit and receipt of benefits owed to Patient F.

75.     When Patient F began treatment with Plaintiff, she submitted her insurance card,

which contained a BlueCross BlueShield logo and indicated that Patient F was a participant in the "Federal Employee Program."

76.     At the time Patient F started treatment, Plaintiff personnel contacted a representative from CareFirst/the Plan to verify Patient F's health coverage and benefits for dialysis treatment.  A CareFirst/Plan representative confirmed that Patient F was a covered participant in the Plan, and that CareFirst/the Plan would pay Plaintiff for out-of-network dialysis treatment at 65% of billed charges.

77.     For dates of service approximately from March 2014 through February 2015, CareFirst/the Plan paid Plaintiff for Patient F's treatment at approximately 65% of billed charges, substantially in accordance with the Plan terms.

78.     Beginning with treatment provided in March 2015 to Patient F, and continuing through December 2015, however, CareFirst/the Plan paid Plaintiff drastically lower amounts— between approximately 7 and 8% of billed charges.

79.     Despite multiple appeals, demand letters, and calls to CareFirst/the Plan and OPM, seeking additional benefits under the Plan for treatment provided to Patient F in 2015, CareFirst/the Plan and OPM have not remedied the underpayments to Plaintiff.

80.     Plaintiff has suffered damages as a result of CareFirst/the Plan's insufficient payments for treatment provided to Patient F from March 2015 through December 2015, in an amount estimated to be at least $308,000.

81.     **Patient G** received a necessary dialysis treatment at RAI's Chillum-Hyattsville outpatient dialysis facility in May 2015.

82.     The Plan covered Patient G and was the primary payer for Patient G's dialysis treatment in May 2015.

83.     In May 2015, Patient G assigned her rights and benefits under the Plan to Plaintiff and consented to Plaintiff's pursuit and receipt of benefits owed to Patient G.

84.     When Patient G began treatment with Plaintiff, she submitted her insurance card, which contained a BlueCross BlueShield logo and indicated that Patient G was a participant in the "Federal Employee Program."

85.     At the time Patient G started treatment, Plaintiff personnel contacted a representative from CareFirst/the Plan to verify Patient G's health coverage and benefits for dialysis treatment.  A CareFirst/Plan representative confirmed that Patient G was a covered participant in the Plan, and that CareFirst/the Plan would pay Plaintiff for out-of-network dialysis treatment at 65% of billed charges.

86.     For the May 2015 date of service, CareFirst/the Plan failed to pay Plaintiff for Patient G's treatment at 65% of billed charges, as dictated by the Plan terms.

87.     Instead, CareFirst/the Plan paid Plaintiff a drastically lower amount— approximately 8% of billed charges.

88.     Despite multiple appeals, demand letters, and calls to CareFirst/the Plan and OPM, seeking additional benefits under the Plan for treatment provided to Patient G in 2015, CareFirst/the Plan and OPM have not remedied the underpayment to Plaintiff.

89.     Plaintiff has suffered damages as a result of CareFirst/the Plan's insufficient payment  for treatment provided to Patient G in May 2015, in an amount estimated to be at least $3,000.

90.     **Patient H** received necessary, periodic dialysis treatments at RAI's Chillum-Hyattsville outpatient dialysis facility, on a regular schedule of approximately three to four treatments each week, beginning approximately in November 2013 and at all times relevant to

-14-

this dispute.

91.     The Plan covered Patient H and was the primary payer for Patient H's dialysis

treatments beginning approximately in January 2014 and at all times relevant to this dispute.

92.     In November 2013, Patient H assigned his rights and benefits under the Plan to

Plaintiff and consented to Plaintiff's pursuit and receipt of benefits owed to Patient H.

93.     On information and belief, when Patient H became covered by the Plan, he

submitted his insurance card, which contained a BlueCross BlueShield logo and indicated that

Patient H was a beneficiary of the "Federal Employee Program."

94.     After Patient H became covered by the Plan, Plaintiff personnel contacted a

representative from CareFirst/the Plan to verify Patient H's health coverage and benefits for

dialysis treatment.  A CareFirst/Plan representative confirmed that Patient H was a covered

beneficiary of the Plan, and that CareFirst/the Plan would pay Plaintiff for out-of-network

dialysis treatment at 65% of billed charges.

95.     For dates of service approximately from January 2014 to February 2015,

CareFirst/the Plan paid Plaintiff for Patient H's treatment at approximately 65% of billed

charges, substantially in accordance with the Plan terms.

96.     Beginning with treatment provided in February 2015 to Patient H, and continuing

through August 2015, however, CareFirst/the Plan paid Plaintiff drastically lower amounts—

between approximately 7 and 11% of billed charges.

97.     Despite multiple appeals, demand letters, and calls to CareFirst/the Plan and

OPM, seeking additional benefits under the Plan for treatment provided to Patient H in 2015,

CareFirst/the Plan and OPM have not remedied the underpayments to Plaintiff.

98.     Plaintiff has suffered damages as a result of CareFirst/the Plan's insufficient

-15-

payments for treatment provided to Patient H from February 2015 through August 2015, in an amount estimated to be at least $135,000.

99.     **Patient I** received necessary, periodic dialysis treatments at RAI's Baltimore-Beltsville outpatient dialysis facility, on a regular schedule of approximately three to four treatments each week, beginning approximately in September 2015 and at all times relevant to this dispute.

100.    The Plan covered Patient I and was the primary payer for Patient I's dialysis treatments beginning approximately in September 2015 and at all times relevant to this dispute.

101.    In September 2015, Patient I assigned his rights and benefits under the Plan to Plaintiff and consented to Plaintiff's pursuit and receipt of benefits owed to Patient I.

102.    When Patient I began treatment with Plaintiff, he submitted his insurance card, which contained a BlueCross BlueShield logo and indicated that Patient I was a participant in the "Federal Employee Program."

103.    At the time Patient I started treatment, Plaintiff personnel contacted a representative from CareFirst/the Plan to verify Patient I's health coverage and benefits for dialysis treatment.  A CareFirst/Plan representative confirmed that Patient I was a covered participant in the Plan.

104.    For dates of service approximately from September 2015 through December 2015, CareFirst/the Plan failed to pay Plaintiff for Patient I's treatment at 65% of billed charges, as dictated by the Plan terms.

105.    Instead, CareFirst/the Plan paid Plaintiff drastically lower amounts—between approximately 0 and 8% of billed charges.

106.    Despite multiple appeals, demand letters, and calls to CareFirst/the Plan and

OPM, seeking additional benefits under the Plan for treatment provided to Patient I in 2015, CareFirst/the Plan and OPM have not remedied the underpayments to Plaintiff.

107.    Plaintiff has suffered damages as a result of CareFirst/the Plan's insufficient payments for treatment provided to Patient I from September 2015 through December 2015, in an amount estimated to be at least $186,000.

108.    For two other patients covered by the Plan who treated at Plaintiff's facilities in 2015, the Plan initially paid Plaintiff low amounts for the patients' 2015 dates of service (well below 65% of billed charges) but then—after Plaintiff submitted multiple appeals and demand letters to CareFirst/the Plan and OPM—paid Plaintiff 65% of billed charges for the patients' 2015 dates of service, as dictated by the Plan terms.

**Plaintiff's Efforts to Resolve Dispute**

109.    Plaintiff personnel made numerous, periodic inquiries to CareFirst/the Plan starting in early 2015 when CareFirst/the Plan first began to underpay claims for treatment provided to the Patients.

110.    In addition, Plaintiff's counsel had several telephone conversations with OPM representatives and left additional messages in an attempt to resolve the parties' dispute in 2016 and 2017.

111.    As further discussed below, for all of the Patients, Plaintiff repeatedly appealed to CareFirst/the Plan and OPM and requested that they reconsider their underpayments and pay in accordance with the 2015 Plan document.

112.    As explained above, the Plan eventually paid at the appropriate rate of 65% of billed charges for two patients in 2015, but failed and/or refused to do so for Patients A through I.

113.    For **Patient A**, Plaintiff submitted appeals/requests for reconsideration and demands for payment to CareFirst/the Plan on at least October 10, 2015; November 20, 2015; February 11, 2016; June 21, 2016; August 1, 2016; November 14, 2016; and July 11, 2017.

114.    Prior to September 2016, CareFirst/the Plan either failed to respond, or simply requested authorization from Patient A, which Plaintiff had previously provided and again subsequently provided.

115.    In a response dated September 1, 2016, CareFirst/the Plan denied Plaintiff's appeal/request for reconsideration for certain dates of service, and claimed to have previously responded to Plaintiff in December 2015 and February 2016, but Plaintiff has no record of receiving those responses (CareFirst/the Plan did not provide copies).

116.    In August 2017, CareFirst/the Plan denied Plaintiff's appeals/requests for reconsideration and demands for all dates of service.

117.    Following CareFirst/the Plan's failures to respond and denials, Plaintiff submitted appeals/requests for reconsideration and demands for payment to OPM on at least March 31, 2016; June 21, 2016; November 14, 2016; October 30, 2017; and November 7, 2017.

118.    OPM failed substantively to respond until a letter dated July 31, 2017, in which it stated for Patient A that "there is no OPM appeal and the 2015 claims were processed under the pilot program, 65% of NPA."

119.    As explained by letter submitted to OPM by Plaintiff on November 7, 2017, there have been OPM appeals filed for Patient A, and the 2015 dates of service must be paid in accordance with the Plan document.

120.    For **Patient B**, Plaintiff submitted appeals/requests for reconsideration and demands for payment to CareFirst/the Plan on at least October 8, 2015; August 2, 2016;

November 14, 2016; July 5, 2017; and December 12, 2017.

121.    CareFirst/the Plan denied Plaintiff's appeals on November 11, 2015; February 23, 2016 (citing a "pilot program" decreasing payment rates for 2015); September 6, 2016; and August 10, 2017.

122.    Following CareFirst/the Plan's denials, Plaintiff submitted appeals/requests for reconsideration and demands for payment to OPM on at least February 5, 2016; November 14, 2016; November 21, 2016; October 30, 2017; and November 7, 2017.

123.    OPM denied Plaintiff's appeals on March 3, 2016, and July 31, 2017.  OPM's July 31, 2017 letter claimed for Patient B only that the 2015 dates of service were previously addressed.

124.    As explained by letter submitted to OPM by Plaintiff on November 7, 2017, the 2015 dates of service must be paid in accordance with the Plan document.

125.    For **Patient C**, Plaintiff submitted appeals/requests for reconsideration and demands for payment to CareFirst/the Plan on at least October 20, 2015; February 11, 2016; June 21, 2016; and November 14, 2016.

126.    CareFirst/the Plan repeatedly failed to respond to Plaintiff's appeals.

127.    Following CareFirst/the Plan's failures to respond, Plaintiff submitted appeals/requests for reconsideration and demands for payment to OPM on at least March 31, 2016; June 21, 2016; November 14, 2016; and November 7, 2017.

128.    OPM failed to provide any substantive response, and did not reference Patient C in a July 31, 2017 letter, in which it addressed many of the Patients whose claims are at issue in this dispute.

129.    For **Patient D**, Plaintiff submitted appeals/requests for reconsideration and

demands for payment to CareFirst/the Plan on at least March 7, 2016, and November 14, 2016.

130.    On April 12, 2016, CareFirst/the Plan denied Plaintiff's appeal, stating that it could accept appeals only on the basis of medical necessity.

131.    Following CareFirst/the Plan's denial and failure otherwise to respond, Plaintiff submitted appeals/requests for reconsideration and demands for payment to OPM on at least June 20, 2016; November 14, 2016; and November 7, 2017.

132.    OPM did not substantively respond—other than providing an erroneous statement from CareFirst/the Plan by e-mail alleging that Plaintiff did not have authorization to appeal— until a letter dated July 31, 2017, in which OPM stated for Patient D that "there is no OPM appeal and the 2015 claims were processed under the pilot program, 65% of NPA."

133.    As explained by letter submitted to OPM by Plaintiff on November 7, 2017, there have been OPM appeals filed for Patient D, and the 2015 dates of service must be paid in accordance with the Plan document.

134.    For **Patient E**, Plaintiff submitted appeals/requests for reconsideration and demands for payment to CareFirst/the Plan on at least October 8, 2015; February 5, 2016; June 21, 2016; and November 14, 2016.

135.    CareFirst/the Plan failed to respond.

136.    Following CareFirst/the Plan's failures to respond, Plaintiff submitted appeals/requests for reconsideration and demands for payment to OPM on at least March 31, 2016; June 21, 2016; November 14, 2016; and November 7, 2017.

137.    OPM did not substantively respond—other than providing an erroneous statement by e-mail that no Plan appeals were lodged—until a letter dated July 31, 2017, in which OPM stated for Patient E that "there is no OPM appeal and the 2015 claims were processed under the

pilot program, 65% of NPA."

138.    As explained by letter submitted to OPM by Plaintiff on November 7, 2017, there have been OPM appeals filed for Patient E, and the 2015 dates of service must be paid in accordance with the Plan document.

139.    For **Patient F**, Plaintiff submitted appeals/requests for reconsideration and demands for payment to CareFirst/the Plan on at least October 8, 2015; November 20, 2015; February 5, 2016; June 21, 2016; August 1, 2016; November 14, 2016; and July 5, 2017.

140.    With respect to the 2015 dates of service in dispute, CareFirst/the Plan either failed to respond, or simply requested authorization from Patient F, which Plaintiff had previously provided and again subsequently provided.

141.    Following CareFirst/the Plan's failures to respond as to the dates of service in dispute, Plaintiff submitted appeals/requests for reconsideration and demands for payment to OPM on at least March 31, 2016; June 21, 2016; November 14, 2016; October 30, 2017; and November 7, 2017.

142.    Prior to July 2017, OPM failed substantively to respond, other than providing a statement from CareFirst/the Plan by e-mail claiming that CareFirst/the Plan previously reconsidered Plaintiff's appeal and responded.  Plaintiff has no record of receiving any such response from CareFirst/the Plan (and CareFirst/the Plan/OPM did not provide a copy).

143.    In a letter dated July 31, 2017, OPM stated for Patient F that there is "no OPM appeal file and the 2015 claims appear to have been processed under the pilot program, 65% of the NPA."

144.    As explained by letter submitted to OPM by Plaintiff on November 7, 2017, there have been OPM appeals filed for Patient F, and the 2015 dates of service must be paid in

accordance with the Plan document.

145.    For **Patient G**, Plaintiff submitted appeals/requests for reconsideration and demands for payment to CareFirst/the Plan on at least March 7, 2016, and November 14, 2016.

146.    On March 24, 2016, CareFirst/the Plan denied Plaintiff's appeal, stating that it was untimely and Plaintiff lacked authorization from Patient G to file the appeal.  CareFirst/the Plan otherwise failed to respond.

147.    Following CareFirst/the Plan's failure to respond and denial, Plaintiff submitted appeals/requests for reconsideration and demands for payment to OPM on at least June 20, 2016; November 14, 2016; and November 7, 2017.

148.    OPM did not substantively respond—other than providing an erroneous statement from CareFirst/the Plan by e-mail alleging that Plaintiff did not have authorization to appeal—until a letter dated July 31, 2017, in which OPM stated for Patient G simply that payment was provided to the Patient.

149.    As explained by letter submitted to OPM by Plaintiff on November 7, 2017, the 2015 dates of service must be paid in accordance with the Plan document, and OPM's response did not address the amount of payment made to the Patient.

150.    For **Patient H**, Plaintiff submitted appeals/requests for reconsideration and demands for payment to CareFirst/the Plan on at least September 1, 2015; October 21, 2015; February 5, 2016; June 21, 2016; and November 14, 2016.

151.    CareFirst/the Plan either failed to respond, or simply requested authorization from Patient H, which Plaintiff had previously provided and again subsequently provided.

152.    Following CareFirst/the Plan's failures to respond, Plaintiff submitted appeals/requests for reconsideration and demands for payment to OPM on at least March 31,

2016; June 21, 2016; November 14, 2016; and November 7, 2017.

153.    OPM did not substantively respond until a letter dated July 31, 2017, in which OPM stated for Patient H that "there is no OPM appeal," some dates of service were paid at billed charges, and "there was no valid authorization for the provider to appeal on behalf of the member."

154.    As explained by letter submitted to OPM by Plaintiff on November 7, 2017, there have been OPM appeals filed for Patient H, the 2015 dates of service must be paid in accordance with the Plan document, most 2015 dates of service were *not* paid at 65% of billed charges, and Plaintiff has repeatedly provided documentation of its authorization to appeal on behalf of Patient H.

155.    For **Patient I**, Plaintiff submitted appeals/requests for reconsideration and demands for payment to CareFirst/the Plan on at least March 7, 2016; May 24, 2016; and November 14, 2016.

156.    CareFirst/the Plan either failed to respond, or simply requested authorization from Patient I, which Plaintiff had previously provided and again subsequently provided.

157.    Following CareFirst/the Plan's failures substantively to respond, Plaintiff submitted appeals/requests for reconsideration and demands for payment to OPM on at least November 10, 2016; November 14, 2016; and November 7, 2017.

158.    OPM did not substantively respond until a letter dated July 31, 2017, in which OPM stated for Patient I that it was unsure which dialysis facility Plaintiff claimed was due additional payment for 2015 dates of service, and all payments were sent to Patient I.

159.    As explained by letter submitted by Plaintiff to OPM on November 7, 2017, the facility has been specified for dates of service in 2015, and OPM's response did not address the

amount of payments made to the Patient.

**Plaintiff's Exhaustion of Administrative Remedies**

160.     Plaintiff seeks, as an assignee of its Patients, payment under the terms of the Plan

for services provided in 2015 to Patients A, B, C, D, E, F, G, H, and I.

161.     OPM's July 31, 2017 letter constitutes "final action on the denial of a health

benefits claim" by OPM under 5 C.F.R. § 890.107(c).

162.     As described above, Plaintiff diligently pursued, and exhausted or should be

deemed to have exhausted, administrative remedies with respect to benefits owed under the Plan

for dialysis treatments provided in 2015 to Patients A, B, C, D, E, F, G, H, and I.

163.     Any further appeal to CareFirst/the Plan and/or OPM related to the Patients'

disputed claims in 2015 would be futile.

**COUNT ONE**

**Order Directing OPM to Require CareFirst/the Plan to Pay Benefits in Dispute
Under FEHBA and 5 C.F.R. § 890.107(c)**

164.     Each of the previous paragraphs is incorporated herein by reference.

165.     The Patients are or were, during the time period relevant to this dispute, covered

by the Plan.

166.     As Plan participants and beneficiaries, the Patients are entitled to the benefits

described in the governing Plan document.

167.     The 2015 Plan document states that benefits for treatment provided by out-of-

network, "non-member" dialysis facilities will be 65% of billed charges.

168.     The Patients assigned their rights and benefits under the Plan to Plaintiff, and

provided written consent for Plaintiff to pursue and receive benefits owed to the Patients for

dialysis treatments provided by Plaintiff.

169.    For the Patients who received dialysis treatment at Plaintiff facilities prior to early 2015, payment was made consistent with the Plan document, at approximately 65% of billed charges.

170.    From early 2015 through the end of 2015, however (as described above), for each of the nine Patients, CareFirst/the Plan failed to pay 65% of billed charges, as required by the Plan document.

171.    CareFirst/the Plan corrected their underpayments for two other patients who treated at Plaintiff's facilities in 2015 following Plaintiff's multiple appeals and demand letters, but have steadfastly and arbitrarily refused to pay benefits due under the 2015 Plan document for the Patients.

172.    As described above, Plaintiff, as an assignee of the Patients, exhausted, or should be deemed to have exhausted, administrative remedies under the FEHBA and federal regulations with respect to all 2015 dates of service in dispute.  In the alternative, further appeal would be futile.

173.    Plaintiff, as an assignee of the Patients, seeks judicial review of OPM's final denial of health benefit claims for the 2015 medical claims at issue in this action.  Plaintiff seeks a court order directing OPM to require CareFirst/the Plan to pay the benefits due under the 2015 Plan document—65% of Plaintiff's billed charges.

174.    CareFirst/the Plan's failure to pay the appropriate amount of benefits under the Plan document for dialysis treatments provided by Plaintiff to the Patients in 2015 has resulted in approximately $2.2 million in underpaid benefits, exclusive of any interest, costs, or fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and against OPM, as follows:

A.      An ORDER directing OPM to require CareFirst/the Plan to pay the amount of benefits due under the 2015 Plan document for 2015 treatment dates, estimated to be approximately $2.2 million, to Plaintiff, as the Patients' assignee;

B.      A JUDGMENT awarding pre- and post-judgment interest, costs, and attorneys' fees to Plaintiff in an amount to be proven in post-trial proceedings;

C.      Any appropriate equitable relief as would be appropriate or necessary to effectuate the Court's judgments; and

D.      Such other and further relief as the Court deems just and equitable.

Dated: December 31, 2018                    Respectfully submitted,


                                            */s/ Caroline Turner English*
                                            Caroline Turner English (D.C. Bar No. 463006)
                                            Katie Heilman (D.C. Bar No. 1007980)
                                            **ARENT FOX LLP**
                                            1717 K Street, NW
                                            Washington, DC  20006-5344
                                            202.857.6000

                                            *Attorneys for Plaintiff RAI CARE CENTERS OF*
                                            *MARYLAND I, LLC*