**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| RAI CARE CENTERS OF MARYLAND I, LLC, |
| *Plaintiff*, |
| v. |
| OFFICE OF PERSONNEL MANAGEMENT, |
| *Defendant*. |

Civil Action No. 18-3151 (TJK)

<u>**MEMORANDUM OPINION AND ORDER**</u>

This is an action for an order directing payment of benefits under the Federal Employees Health Benefits Act.  RAI, a dialysis provider, alleges that the Office of Personnel Management, which sponsors a health insurance plan that covers federal employees, failed to pay over $2 million for services to patients covered by the plan.  OPM has moved to dismiss, arguing that RAI—which is proceeding as an assignee of its patients—lacks standing and has failed to state a claim.  For the reasons explained below, the Court will deny the motion.

**I.      Background**

The Federal Employees Health Benefits Act (FEHBA), 5 U.S.C. §§ 8901 *et seq.*, "creates a subsidized health insurance system for federal employees."  *Doe v. Devine*, 703 F.2d 1319, 1321 (D.C. Cir. 1983).  FEHBA authorizes the Office of Personnel Management (OPM) "to procure and administer health benefits for federal workers by contracting with private health insurance carriers," selecting the benefits available, fixing premium rates, disseminating information about the plan to federal employees, and making determinations on claim disputes. *Bridges v. Blue Cross and Blue Shield Ass'n*, 935 F. Supp. 37, 39 (D.D.C. 1996).  Congress's

goal in enacting FEHBA was to "protect federal employees against the high and unpredictable costs of medical care and to assure that federal employee health benefits are equivalent to those available in the private sector so that the federal government can compete in the recruitment and retention of competent personnel." *Am. Fed. of Gov't Emps., AFL-CIO v. Devine*, 525 F. Supp. 250, 252 (D.D.C. 1981). To accomplish its goal, FEHBA creates a "comprehensive administrative enforcement mechanism for review of disputed claims" within OPM. *Bridges*, 935 F. Supp. at 42. After a plan beneficiary exhausts administrative remedies, she may bring a "judicial action against the OPM." *Id.*; *see* 5 C.F.R. § 890.107(c), (d).

RAI Care Centers of Maryland I, LLC ("RAI") is a dialysis provider that treats patients covered by a health insurance plan for federal employees. ECF No. 1 ("Compl.") at 1. OPM sponsors the plan, which is administered by CareFirst BlueCross BlueShield ("CareFirst") and governed by FEHBA. *Id.* ¶¶ 2, 10. RAI alleges that from 2012 onward, CareFirst "routinely told" it that, consistent with the plan's governing document, CareFirst would pay 65% of RAI's billed charges as an out-of-network provider. *Id.* at 1, ¶¶ 11–15. CareFirst paid RAI at that rate until 2015, when it abruptly reduced payments for services to nine patients to between 0–11% of billed charges. *Id.* ¶¶ 25–26, 33, 42, 51, 60, 69, 78, 87, 96, 105. RAI alleges that CareFirst ultimately paid 65% of billed charges for two other patients treated in 2015, but despite many calls, letters, and requests for reconsideration, neither CareFirst nor OPM ever remedied the underpayments for the nine patients at issue. *Id.* ¶¶ 109–12.

In December 2018, RAI sued for repayment as an assignee of these patients and alleged that it had either exhausted or "should be deemed to have exhausted" its administrative remedies. *Id.* ¶ 162. It seeks an order under FEHBA and 5 C.F.R. § 890.107(c) directing OPM to require

CareFirst to pay it the approximately $2.2 million allegedly owed. *Id.* ¶¶ 173–74. RAI moved to dismiss. *See generally* ECF No. 12-1; ECF No. 16; ECF No. 17.

## II.   Legal Standard

To survive a Rule 12(b)(1) motion to dismiss for lack of standing, "a complaint must state a plausible claim that the plaintiff has suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Humane Soc'y v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015). And likewise, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering the motion to dismiss, the Court will "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III.   Analysis

### A.   Rule 12(b)(1)

#### 1.   Standing

OPM asserts that RAI lacks standing for two reasons. OPM first argues that, even if RAI can proceed as an assignee, it has failed to adequately plead that status. ECF No. 12-1 at 9–11. Because assignees have standing to sue based on the assignment, this defect in pleading would mean that RAI lacks standing. *See Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 284–86 (2008); *cf. Belize Soc. Dev. Ltd. v. Gov't of Belize*, 5 F. Supp. 3d 25, 35 (D.D.C. 2013) (addressing the argument that a valid assignment was required for a plaintiff to enforce an arbitration award). OPM argues that RAI does not "allege any facts about the purported

assignments, identifying their nature, their limitations, or their duration." ECF No. 12-1 at 10. "By failing to identify the assignors or provide *any* details of the assignments," OPM says, "RAI has not adequately pleaded the existence of assignments." *Id.* This argument comes up well short.

RAI alleges that "[a]t the outset of each Patient's treatment at a Plaintiff facility, each Patient signed an agreement assigning his/her rights and benefits under the Plan to Plaintiff," that "[t]hrough these Assignments, each Patient provided written consent for Plaintiff to pursue and receive benefits due under the Plan for dialysis treatments provided by Plaintiff," and that as a result, it may act as the patients' personal representative and "pursue legal remedies afforded to them." Compl. ¶¶ 18–20. RAI also claims that each patient "assigned [their] rights and benefits under the Plan and consented to Plaintiff's pursuit and receipt of benefits owed to [the patient]," and RAI details the month and year of each assignment. *Id.* ¶¶ 29, 38, 47, 56, 65, 74, 83, 92, 101. Thus, the complaint identifies specific patients, the approximate dates they executed assignment agreements, and that they "assigned [their] rights and benefits under the Plan" to RAI. *Id.* Taking these allegations as true, RAI has plausibly alleged that it is the assignee of the nine patients at issue.

OPM, citing several unpublished district court cases from outside this Circuit, faults RAI for failing to allege more details about the assignments, such as their "nature, their limitations, or their duration." ECF No. 12-1 at 10; *see, e.g.*, *Progressive Spine & Orthopedics v. Empire Blue Cross Blue Shield*, No. 16-cv-1649, 2017 WL 751851, at *5 (D.N.J. Feb. 27, 2017) (finding that a healthcare provider lacked standing as an assignee under ERISA because it failed to either plead the language of the assignment in the complaint or attach the assignment document to it, although it alleged that the patients had signed contracts assigning their benefits to the provider).

But RAI faces no heightened pleading standard to allege a valid assignment, and the Court

declines to impose one.  *See N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782

F. Supp. 2d 294, 301 (S.D. Tex. 2011) (rejecting the argument that a complaint that alleged each

patient had assigned their rights under ERISA to the healthcare provider was too conclusory,

because accepting it would "hold [Plaintiff] to a higher standard than the case law requires."),

*aff'd*, 781 F.3d 182, 191–92 (5th Cir. 2015).  OPM also cites *Spine Care Del., LLC v. State Farm*

*Mut. Auto. Ins. Co.*, No. 17-cv-1816, 2018 WL 810112 (D. Del. Feb. 9, 2018).  But there, the

court's decision to dismiss the complaint with leave to amend turned on its wholesale failure to

identify the patient-assignors in any way.  *Id.* at \*3–4.  Here, although the patients are identified

with pseudonyms such as "Patient A" to protect their medical privacy, they are individually

identified with more specificity.  And RAI has since provided information to OPM to further

identify them.  *See* ECF No. 17-1.[1]

RAI has alleged that on or about certain dates, the specified patients signed contracts

assigning their claims for healthcare benefits to RAI.  Compl. ¶¶ 29, 38, 47, 56, 65, 74, 83, 92,

101.  At a later point in the litigation, RAI will need to prove the truth of those allegations, but it

has adequately pled them.

---

[1] OPM argues that this chart is insufficient to identify the patients, because while nine patients are identified in the complaint as Patients A through I, the chart includes two additional ones, referred to as Patients J and K.  While the inclusion of these additional patients is somewhat confusing—perhaps they are those two whose claims were ultimately resolved and thus are not at issue for that reason, Compl. ¶ 112— there is no reason their inclusion should affect OPM's ability to identify Patients A through I, the only patients whose claims apparently *are* at issue, to compile the administrative record.  Thus, because the complaint is not "so vague or ambiguous that the [defendant] cannot reasonably prepare a response," the Court will deny OPM's request in the alternative for a more definite statement.  Fed. R. Civ. P. 12(e); *see Cheeks v. Fort Myer Const. Co.*, 71 F. Supp. 3d 163, 168 (D.D.C. 2014) ("Courts are reluctant to compel a more definite statement pursuant to Rule 12(e) and to prevent Rule 12(e) from becoming a substitute for discovery, courts will generally deny a motion for a more definite statement where the information sought may be obtained in discovery." (cleaned up)).

OPM next argues that because the health insurance plan documents require CareFirst to pay benefits to the patients, RAI lacks standing because the Court cannot redress its injury. ECF No. 12-1 at 11–13. But it is far from clear that the Court cannot order payment directly to RAI. 8 C.F.R. § 890.107(c) states that recovery in this kind of suit is "limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute," but it says nothing about whom the carrier must pay. OPM correctly notes that according to the governing plan document, CareFirst pays benefits for out-of-network treatment to the patient, who then "must" pay the provider, but it is unclear whether the plan document binds the Court.[2] ECF No. 1-1 at 14. Ultimately, though, this uncertainty does not matter for purposes of resolving whether RAI has standing. Even if the Court were to order OPM to direct CareFirst to pay the patients, according to RAI, the patients' assignments require them to turn that judgment over to RAI. ECF No. 16 at 10; Compl. ¶¶ 29, 38, 47, 56, 65, 74, 83, 92, 101. That would redress RAI's injury, although in a roundabout way.

OPM rejoins that this chain of events is too "speculative" to show redressability, because a patient could be deceased, bankrupt, or otherwise legally prohibited from transferring an award to RAI. ECF No. 12-1 at 12 & n.6. But a plaintiff must show only that it is "likely," not certain, that a favorable decision will redress her injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotation omitted). And where "relief for the petitioner depends on actions by a third party not before the court, the petitioner must demonstrate that a favorable decision would create 'a significant increase in the likelihood that the plaintiff would obtain relief that directly

---

[2] Although OPM argues that "[t]his Court could not order non-party CareFirst to deviate from the Plan Brochure provisions and instead pay the amounts directly to RAI," it cites no authority for that proposition, and RAI does not address at all whether the Court could order OPM to direct CareFirst to deviate from that document. ECF No. 12-1 at 12.

redresses the injury suffered.'" *Klamath Water Users Ass'n v. FERC*, 534 F.3d 735, 739 (D.C.

Cir. 2008). Here, RAI has shown such a "significant increase." It is of course possible that an

unforeseen circumstance may prevent an individual patient from remitting any judgment to

RAI—but that is OPM's speculation, not RAI's. For these reasons, OPM's challenge to RAI's

standing fails.[3]

### 2. Sovereign Immunity

OPM also argues that RAI's complaint must be dismissed because it is barred by

sovereign immunity, which is properly considered under Rule 12(b)(1). *Morrow v. United

States*, 723 F. Supp. 2d 71, 79 (D.D.C. 2010); ECF No. 12-1 at 17–18. Under 5 U.S.C. § 8912,

sovereign immunity is waived for claims "against the United States founded on" FEHBA. *See

Nat'l Treasury Emps. Union v. Campbell*, 589 F.2d 669, 673 & n.6 (D.C. Cir. 1978). That

provision operates as a "broad consent to all suits brought to enforce rights and obligations

created by the Health Benefits Act." *Id.* at 674. Still, OPM contends that Congress did not

explicitly waive suits for providers proceeding as assignees, noting that a waiver of sovereign

immunity must be "strictly construed" in favor of the sovereign. *Sossamon v. Texas*, 563 U.S.

277, 292 (2011). But the broad language of 8 U.S.C. § 8912, which does not refer to any

particular type of plaintiff, plainly covers this suit. OPM also argues that a different section of

the statute, 5 U.S.C. § 8902(j), excludes assignees from the waiver of sovereign immunity. That

section reads, "Each contract under this chapter shall require the carrier to agree to pay for or

provide a health service or supply in an individual case if the Office finds that the employee,

---

[3] The Court's conclusion on this point is further bolstered by the Supreme Court's decision in *Sprint Communications Co.* In that case, the plaintiff-assignees were contractually obliged to remit any award to the assignors, whereas here, the assignors must pay the plaintiff-assignee. Still, the Court held that such assignees "for collection" have standing to bring their assignors' claims, even when the assignee will ultimately receive *no* part of any judgment. 554 U.S. at 271, 275, 280–81, 284–85.

annuitant, family member, former spouse, or person having continued coverage under section 8905a of this title is entitled thereto under the terms of the contract." This provision has nothing to do with sovereign immunity. RAI seeks to require the carrier, CareFirst, to pay for services which it argues the patients, who had coverage under FEHBA, were entitled to under their plans. Nothing about this suit conflicts with § 8902(j).[4] For these reasons, this suit is not barred by sovereign immunity, and the Court will not dismiss it on that basis.

**B.      Rule 12(b)(6)**

**1.      OPM's Assignee Status Under FEHBA**

OPM argues that RAI fails to state a claim because it is not a proper plaintiff under FEHBA. As mentioned, RAI proceeds as the assignee of its patients, and in support alleges that each patient "provided written consent for Plaintiff to pursue and receive benefits due under the Plan for dialysis treatments provided by Plaintiffs." Compl. ¶ 19. OPM argues that FEHBA does not permit such assignments, and that under OPM's binding regulations, only a "covered individual" may sue for payment of benefits. 8 C.F.R. § 890.107(c); ECF No. 12-1 at 6–9. The regulations define "covered individual" to mean "an enrollee or a covered family member" which, OPM says, excludes assignees. 5 C.F.R. § 890.101.

But this conclusion does not follow from the text of the regulation as neatly as OPM argues. 8 C.F.R. § 890.107(c) says that covered individuals "may" sue for denial of health

---

[4] OPM also argues in several contexts that permitting assignees to bring FEHBA suits would run contrary to the purpose of the statute, which is to "protect federal employees against the high and unpredictable costs of medical care," not to protect providers. *Am. Fed. of Gov't Emps.*, 525 F. Supp. at 252. But this suit is not necessarily contrary to that purpose, even if that consideration could override the statute's text. Although there is no information in the record about whether the patients in this case have been required to make up for the alleged shortfalls of CareFirst and OPM, that may happen in some instances. *See* ECF No. 1-1 at 14 ("You must pay any difference between the amount Non-participating providers charge and our allowance (except in certain circumstances . . . ).").

benefits, but it does not say that "only" such individuals can sue or specifically exclude assignees.  And typically, "an assignee stands in the shoes of his assignor, deriving the same . . . rights and remedies [that] the assignor then possessed."  *Fox-Greenwald Sheet Metal Co. v. Markowitz Bros., Inc.*, 452 F.2d 1346, 1357 n.69 (D.C. Cir. 1971); *see also Psych. Inst. V. Conn. Gen. Life Ins. Co.*, 780 F. Supp. 24, 30 (D.D.C. 1992) ("Under federal common law, an assignee has the right to bring the claims of his assignor.").  Thus, an assignee brings claims that belong to another who is entitled to sue; it does not pursue its own, independent claims.  Without an explicit exclusion of assignees under FEHBA, it is not clear why the assignee of a covered individual would be unable to sue to vindicate that person's rights.

OPM also asserts that the legislative history of 5 C.F.R. § 8901.107 shows that the agency intended to prevent assignees from bringing a patient's claims.  ECF No. 12-1 at 6.  This argument gets it no further.  Even putting aside the problems with using legislative history as an interpretive tool, on balance, the document OPM cites suggests the opposite conclusion.  That document is OPM's response to comments submitted during notice-and-comment rulemaking:

> Three commenters suggested that we amend the regulations to clarify that the regulations apply to providers to whom the covered individual has assigned the right to pursue the claim. We have not accepted this suggestion because the right of access to the disputed claims process belongs to the covered individual. We have amended the interim regulations to clarify that another person or entity, whether or not a provider, can gain access to the disputed claims process only when acting on behalf of the covered individual and with the covered individual's specific written consent.

Federal Employees Health Benefits Program: Filing Claims; Disputed Claims Procedures and Court Actions, 61 Fed. Reg. 15,177, 15,177 (Apr. 5, 1996).  To be sure, this response shows that OPM declined to go so far as to say that the "regulations apply" to assignees.  But at the same time, it recognized that "another person or entity, whether or not a provider, can gain access to the disputed claims process . . . when acting on behalf of the covered individual and with the

covered individual's specific written consent." *Id.* That is precisely RAI's position. Moreover, it is unclear (at best) whether the "disputed claims process" referenced in this response includes access to judicial review, rather than referring solely to the administrative procedures that must be exhausted beforehand. *Cf.* ECF No. 17 at 8 (distinguishing between the "administrative disputed claims process" and the "judicial review provision" of the regulation).

Finally, although no case from this Circuit has addressed whether an assignee may sue under FEHBA and 8 C.F.R. § 8901.107, the parties have identified no court anywhere that has concluded that assignees are prohibited from doing so. Without specifically addressing the issue, the Tenth and Fifth Circuits have permitted suits along these lines to proceed. *See Weight Loss Healthcare Ctrs. of Am., Inc. v. OPM*, 655 F.3d 1202, 1204 (10th Cir. 2011); *Transitional Learning Cmty. at Galveston, Inc. v. OPM*, 220 F.3d 427, 429 (5th Cir. 2000). And while OPM cites *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 976 (9th Cir. 2007), that case held merely that FEHBA's administrative procedures do not apply to a provider's *own* contractual claims against insurance carriers who administer health insurance programs for federal employees. *Id.* at 976.

Because nothing prohibits RAI from pursuing a patient's claim as an assignee with her specific written consent, the Court will deny OPM's motion to dismiss for failure to state a claim on those grounds.

### 2.    Exhaustion of Remedies

Finally, OPM claims that RAI has not properly pleaded that it has exhausted its administrative remedies because its allegations on this score are too conclusory to pass muster. An individual appealing the denial of a claim under FEHBA must follow a detailed series of administrative steps to request reconsideration by both the health insurance carrier and OPM before suing. *See* 5 C.F.R. §§ 890.105, 890.107. These include filing a request for

reconsideration with the carrier within six months after being notified that the claim has been denied and requesting OPM review within 90 days after the carrier denies reconsideration. 5 CFR §§ 890.105(b), (e)(1). Although RAI pleads that it has "diligently pursued, and exhausted or should be deemed to have exhausted, administrative remedies" and sets forth many allegations about communications it had with CareFirst and OPM as to each patient's claim, OPM argues that it is unclear whether RAI has taken the steps required by 5 C.F.R. § 890.105. Compl. ¶ 162.

But RAI must plead facts relating to exhaustion of administrative remedies only if that exhaustion is jurisdictional. And to the contrary, if exhaustion is merely a "claim-processing rule, the failure to pursue the required administrative remedies would be an affirmative defense, which the defendant would have the burden of pleading and proving." *T.H. v. District of Columbia*, 255 F. Supp. 3d 55, 59 (D.D.C. 2017). Thus, under those circumstances, failure to *plead* exhaustion—as opposed to actually *failing* to exhaust—would not be grounds for dismissal. *See Duffy v. Dodaro*, No. 16-cv-1178 (RDM), 2020 WL 1323225, at *8 n.2 (D.D.C. Mar. 21, 2020). And critically, without a clear statement from Congress to the contrary, courts must treat statutory limitations as nonjurisdictional. *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). Here, no party has pointed to such a statement or argued that FEHBA's exhaustion requirement is jurisdictional.[5] Indeed, FEHBA's exhaustion regulations are just that—regulations—rather than statutes passed by Congress. *See* 5 C.F.R. § 890.105; *Pension*

---

[5] OPM does mention in a footnote in its reply that the Tenth Circuit found FEHBA's exhaustion requirements to be jurisdictional in *Bryan v. Office of Personnel Management*, 165 F.3d 1315, 1318–19 (10th Cir. 1999). ECF No. 17 at 11 n.6. But that Circuit strongly questioned its holding in *Bryan* after the Supreme Court clarified in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) that for an exhaustion requirement to be jurisdictional, Congress must clearly say so. *Kansas ex rel. Kansas Dep't for Children & Families v. SourceAmerica*, 874 F.3d 1226, 1250 (10th Cir. 2017).

*Ben. Gar. Corp. v. Carter & Tillery Enters.*, 133 F.3d 1183, 1187 (9th Cir. 1998) ("[W]hen, as in

this case, the exhaustion requirement is created by agency regulations, the decision whether to

require exhaustion is a matter for district court discretion." (quoting *Kobleur v. Grp.*

*Hospitalization & Med. Servs.*, 954 F.2d 705, 711 (11th Cir. 1992)).   Because RAI did not have

to plead exhaustion, OPM's argument that the complaint should be dismissed for failing to do so

is meritless.  *See Scholl v. QualMed, Inc.*, 103 F. Supp. 2d 850, 853 (E.D. Pa. 2000).  Of course,

OPM is free to file a motion for summary judgment, supported by the administrative record,

arguing that RAI did not in fact exhaust its administrative remedies.[6]

---

[6] OPM also argues, more specifically, that RAI's allegations in the complaint show that its claims were not exhausted with respect to Patient C. ECF No. 12-1 at 14–15.  To be sure, when facts supporting an affirmative defense are apparent from the face of the complaint, the defendant may assert the defense in a motion to dismiss. *Duffy*, 2020 WL 1323225, at *8 n.2. But that is not the case here.  When a carrier fails to respond to a request to reconsider a benefit decision, the regulations require a covered individual to submit a request for OPM review within 120 days.  5 C.F.R. § 890.105(e)(1)(ii).  RAI alleges that CareFirst failed to respond to RAI's requests for reconsideration relating to Patient C that were submitted "at least" on four dates spanning from October 20, 2015 to November 14, 2016, and that it then submitted requests for OPM review on "at least" three dates, the earliest of which was March 31, 2016.  Compl. ¶¶ 125–27.  OPM points out that 163 days elapsed between October 20, 2015 and March 31, 2016.  But even assuming that the clock begins to run from the first request to the carrier if the covered individual files multiple requests, RAI's allegation that it filed requests for OPM review on "at least" the dates specified leaves open the possibility that it also filed a request on an earlier date.  Compl. ¶ 127.  So at bottom, it is not apparent from the face of the complaint that RAI failed to exhaust administrative remedies as to Patient C.

## IV.    Conclusion and Order

For all these reasons, OPM's Motion to Dismiss, ECF No. 12, is **DENIED**.  In addition, because the Court did not require an administrative record to resolve this motion, OPM's Motion for Relief from the Requirements of Local Civil Rule 7(n), ECF No. 13, is **GRANTED**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 8, 2020.